Commonwealth *v.* Walters, Appellant.

Submitted April 15, 1968. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*John W. Packel* and *Melvin Dildine,* Assistant Defenders, and *Herman I. Pollock,* Defender, for appellant.

*Joel S. Moldovsky* and *Michael J. Rotko,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, August 6, 1968:

On August 2, 1962, while represented by counsel, appellant entered a plea of guilty to murder generally. The Commonwealth certified that the crime rose no higher than murder in the second degree. Walters was eventually convicted of this offense and received a sentence of ten to twenty years imprisonment. No direct appeal was taken. Subsequently, appellant filed a petition under the Post Conviction Hearing Act alleging (1) that his guilty plea was not knowingly and intelligently entered; (2) that a coerced confession was used at the degree of guilt hearing, and furthermore that this confession motivated the entry of his plea; and (3) that trial counsel abandoned him immediately after trial without informing appellant of any appeal rights as required by *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814 (1963). An evidentiary hearing, with counsel, was held before Judge SPORKIN who

dismissed the petition, holding that appellant had failed to establish that his plea was invalid, or that his confession was coerced. Judge SPORKIN made no finding on the *Douglas* claim.

In this appeal from the denial of relief below, Walters raises only the *Douglas* issue.

The Commonwealth relies heavily upon *Commonwealth v. Stokes,* 426 Pa. 265, 232 A. 2d 193 (1967) where this Court faced squarely the problem of the direct appeal from a conviction of second degree murder following a guilty plea. We said there of the alleged *Douglas* violation: "A plea of guilty to murder generally is sufficient of itself to sustain a conviction of murder in the second degree. [Citation omitted.] Thus the only issues which would have been available for appellant to challenge on direct review would have been the validity of the plea and the lawfulness of the sentence. But since both these claims are cognizable in a collateral proceeding, the denial of the right to appellate review, even if true, would not be prejudicial."[1]

---

[1] Because *Stokes* does not *suspend* an accused's rights under *Douglas*, but merely declares that all permissible appellate arguments following the entry of a guilty plea may be raised collaterally, it is still imperative that the post-conviction court hold an evidentiary hearing whenever the petitioner alleges facts which, if true, would entitle him to relief. It was for this reason that in *Stokes* itself we remanded the case in order for appellant to clarify his petition after he had been denied a hearing below. Similarly, in *Commonwealth v. Sapp,* 428 Pa. 377, 238 A. 2d 208 (1968), we remanded a case where appellant had pled guilty to burglary and larceny and the court below dismissed, without hearing, his petition for collateral relief. What *Stokes* and *Sapp* together make clear is that a court should not dismiss a post-conviction hearing petition in a case where petitioner has entered a guilty plea until the court has independently determined that there is no factual basis for relief and that the guilty plea was knowingly and intelligently entered.

We also point out, as we did in *Stokes* itself, that although the rule there announced applies to all guilty pleas, including those

426 Pa. at 267-68, 232 A. 2d at 194. Quite simply, therefore, it is contended by the Commonwealth that since appellant has not raised any claim as to the validity of his sentence, and since the guilty plea issue has already been heard below, resolved against appellant, and has not been appealed, a direct appeal is unnecessary under *Stokes,* even conceding that Walters was denied his *Douglas* rights.[2]

Appellant candidly acknowledges the compelling nature of the Commonwealth's position, as well as the controlling nature of *Stokes,* but urges this Court to reconsider its holding in that case. It is appellant's contention that the appellate review of a hearing under the Post Conviction Hearing Act is not a satisfactory substitute for a direct appeal to this Court because there is no absolute right to oral argument in appeals from collateral proceedings, nor is appellate counsel made mandatory in these cases. Furthermore, appellant claims that, in addition to the legality of sentence and the validity of the guilty plea, an individual who pleads guilty to murder generally and is convicted of murder in the second degree should be able to appeal the refusal of the trial court to hold that appellant has introduced sufficient evidence to lower the crime to voluntary manslaughter. Since this is-

---

not involving homicides, there is one exception: a conviction of murder in the first degree following a plea of guilty. As we said in *Stokes*: "Since the Commonwealth is required to prove the elements of first degree murder beyond a reasonable doubt, [citations omitted.], a defendant so convicted [who pleads guilty] may have other errors to press on direct review [in addition to the validity of his plea and legality of sentence]." 426 Pa. at 268, n.5, 232 A. 2d at 194, n.5.

[2] In the present case, there is no question that appellant was denied his rights under *Douglas.* For, at the hearing below, both of Walters' trial counsel testified, and both candidly admitted that they told appellant nothing whatsoever about his right to appeal. See P.C.H.A. notes of testimony, pages 45, 46, 49, 50.

sue, one involving the degree of guilt, is, according to appellant, not of the type "cognizable in a collateral proceeding" the denial of *Douglas* rights in a case where voluntary manslaughter is a possible verdict must be deemed prejudicial.

Neither of appellant's arguments concerning the procedure used in appeals from collateral proceedings merit much attention. As for his contention that oral argument is not guaranteed, we fail to see how the submission of a case on briefs alone runs afoul of the Constitution of the United States, which forms the basis for *Douglas,* so long as appellant has the assistance of counsel on his brief.

So also do we find appellant's argument concerning his right to counsel on appeal from a collateral hearing unpersuasive. In the first place, appellant is hardly in a position to complain of the lack of counsel in an appeal from a post-conviction hearing when, in fact, he has counsel in this very case. Moreover, all future collateral appellants will be guaranteed the right to counsel by Post Conviction Rule 1503, effective August 1, 1968. The rule provides that "[w]here counsel has been appointed [in a Post Conviction Hearing Act case], such appointment shall be effective until final judgment, including any proceedings upon direct appeal."[3]

---

[3] Even prior to the adoption of Rule 1503, the decisions of this Court indicated that counsel appointed pursuant to §12 of the Post Conviction Hearing Act was to remain with a prisoner on appeal. *Commonwealth v. Johnson,* 428 Pa. 210, 214, 236 A. 2d 805, 808 (1968), in deciding that the waiver standard for post-conviction counsel would be the same as that required by *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792 (1963) for waiver of trial counsel, recited: "Although it is true that the Gideon right to counsel is dictated by the Due Process Clause itself, whereas the right to counsel at a Post Conviction Hearing Act proceeding exists at present only by state statute, it would appear that our Richardson [*Commonwealth v. Richardson,* 426 Pa. 419, 233 A. 2d 183

Finally, we face appellant's argument that he must be granted a direct appeal to challenge the trial court's failure to find him guilty of voluntary manslaughter. Initially we note that the weakness in this contention lies in the mistaken belief on the part of appellant that the refusal of the trial judge to find voluntary manslaughter in fact constitutes that type of issue which must be heard on direct appeal, rather than collateral attack. Although we agree with appellant that the issue would be one cognizable only on direct appeal if it involved a sufficiency of the evidence question,[4] a close analysis reveals that appellant's argument is but another attack on the validity of his guilty plea.

Although it is true that an individual who enters a plea of guilty to murder generally is given the opportunity to introduce evidence that will mitigate the offense to voluntary manslaughter,[5] we must not lose sight of the fact that the plea *itself* is sufficient to sus-

---

1967)] and Hoffman [*Commonwealth v. Hoffman*, 426 Pa. 226, 232 A. 2d 623 (1967)] decisions have made the right to post-conviction counsel in the first collateral proceeding just as mandatory for Pennsylvania as Gideon made the right to trial counsel mandatory for all the states under due process." From this reasoning, we must also conclude that since the *Gideon* right to counsel includes the right to have that counsel continue on appeal, *Douglas v. California*, supra, so also the *Richardson* and *Hoffman* right to collateral counsel, cut as it is from the *Gideon* cloth, must also include the right to assistance at the appellate level.

[4] *Commonwealth ex rel. Stevens v. Myers*, 398 Pa. 23, 156 A. 2d 527 (1959), cert. denied, 363 U.S. 816, 80 S. Ct. 1254 (1960); *Commonwealth ex rel. Fletcher v. Cavell*, 395 Pa. 134, 149 A. 2d 434 (1959); *Commonwealth ex rel. Ashmon v. Banmiller*, 391 Pa. 141, 137 A. 2d 236 (1958).

[5] See *Commonwealth ex rel. Kerekes v. Maroney*, 423 Pa. 337, 340, 223 A. 2d 699, 701 (1966); *Commonwealth v. Kirkland*, 413 Pa. 48, 63, 195 A. 2d 338, 345 (1963); *Commonwealth v. Etzoola*, 52 Luzerne L.R. 270 (1962); *United States ex rel. Parker v. Rundle*, 259 F. Supp. 420 (E.D. Pa. 1966) (applying Pennsylvania law.)

tain a conviction of murder in the second degree. *Commonwealth ex rel. Bostic v. Cavell*, 424 Pa. 573, 576, 227 A. 2d 662, 664 (1967). Thus, when the guilty plea is entered, the defendant, in effect, not only concedes that he is guilty of second degree murder, but he also concedes that there is sufficient *evidence* to justify a finding of murder in the second degree. However, since the plea is entered before the court hears the actual evidence of guilt, there must be some way for the judge to avoid a finding of second degree murder, should the evidence compel conviction of only a lesser included offense. The way which the law has devised for permitting the judge to make this lesser finding, is to allow the defendant to introduce evidence that the crime committed rises no higher than voluntary manslaughter. Thus, in spite of defendant's "admission" of guilt to the crime of murder in the second degree, and his implicit admission that the evidence justifies this conviction, if the judge, upon hearing the evidence offered in mitigation of the plea, concludes that as a matter of law the defendant may not be found guilty of murder in the second degree, but that the evidence does support a finding of guilty of voluntary manslaughter, the court will adjudge defendant guilty of this lesser included offense.[6]

It is therefore apparent that appellant in the present case is really claiming that the judge should not have accepted his plea to murder generally in view of the evidence of voluntary manslaughter. Viewed in this light, the argument is but another attack on the

---

[6] There may even be cases where the judge is convinced that if the defendant's evidence is believed he would have a complete defense to the crime charged. In that case, the court would allow the defendant to withdraw his plea of guilty and stand trial. See American Bar Association Project on Minimum Standards for Criminal Justice, "Withdrawal of the Plea," page 52 (Tent. draft 1967). See also *Commonwealth v. Metz*, 425 Pa. 188, 228 A. 2d 729 (1967).

validity of appellant's guilty plea, and as such review-
able collaterally. At this point, it would be possible
to affirm the court below without further discussion
since that court found appellant's plea valid, and tech-
nically no appeal was taken from that finding. How-
ever, since the court below never examined the plea in
the face of this type of attack (Judge SPORKIN ruled
only on appellant's contentions that the plea was the
product of an involuntary confession and that it was
not intelligently entered), we shall examine the evi-
dence to determine whether the trial judge properly
permitted the plea of guilty to stand. In making this
examination, we shall assume, since this *was* decided
below and not appealed, that the plea was knowingly
and intelligently entered by appellant. We confine
ourselves therefore to the narrow issue of whether the
trial judge committed an error of law or abuse of dis-
cretion in accepting the plea after hearing the evidence
of voluntary manslaughter.

Although unmarried, appellant shared an apartment
with the deceased, Mamie Harkless. The couple began
drinking heavily the night before the murder. By the
morning of the fateful day, appellant was apparently
quite intoxicated; however, he continued to drink large
quantities of wine right up to the moment of the crime
which occurred on the afternoon of February 15, 1962.
Two Commonwealth witnesses testified that the couple
had been arguing that morning. Walters testified that
during the later stages of this argument, Miss Hark-
less threw appellant's hat and coat out of their apart-
ment window. Appellant retrieved the clothing and
returned to the apartment. He further testified that
the deceased was hurling abusive epithets at him. He
requested her to stop, and when she did not, he picked
up a knife from the kitchen table and stabbed her.

If there was any single feature of this crime which
was emphasized throughout trial, it was defendant's

severe intoxication. Although he testified that he had been arguing with the deceased and that she had been cursing at him, appellant's main contention was not that he killed her in the heat of anger, but that he was simply too drunk to realize what he was doing. In fact, appellant never testified that he was particularly angry over the deceased's conduct. Typical of appellant's attitude toward the crime is this excerpt from the trial record: "BY THE COURT: Q. Why did you stab her? A. [by appellant] I don't know too much about it. Q. You don't know what? A. I don't know too much about it. I was intoxicated." (Record at 15.)

The law on both voluntary manslaughter and intoxication as a defense to murder is clear. In *Commonwealth v. Paese,* 220 Pa. 371, 373, 69 Atl. 891, 892 (1908), we defined voluntary manslaughter quite explicitly. "To reduce an intentional blow, stroke or wounding, resulting in death, to voluntary manslaughter, there must be sufficient cause of provocation and a state of rage or passion, without time to cool, placing the prisoner beyond the control of his reason, and suddenly impelling him to the deed. If any of these be wanting—if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder: Com. v. Drum, 58 Pa. 9 (17)." This explanation retains vitality today. See *Commonwealth v. Palermo,* 368 Pa. 28, 81 A. 2d 540 (1951) ; *Commonwealth v. Cargill,* 357 Pa. 510, 55 A. 2d 373 (1947). The evidence in the present case furnishes no real proof whatsoever that Walters acted in the heat of passion. The mere fact that he had been arguing with the deceased and that she had cursed at him, will not, by itself, be sufficient to show that passion motivated the crime, or that there was no time to cool.

On the other hand, there was considerable evidence that appellant was seriously intoxicated at the time of the stabbing. In fact, the trial judge at sentencing stated specifically that this was the reason he agreed to accept the Commonwealth's certification that the crime was murder in the second degree. The law is quite clear that intoxication can lower the degree of guilt, but it remains *murder*. "Intoxication sufficient to deprive the mind of power to form a design with deliberation and premeditation, and to properly judge the legitimate consequences of an act, will reduce a killing from murder in the first degree to murder in the second degree." *Commonwealth v. McCausland,* 348 Pa. 275, 277, 35 A. 2d 70, 71 (1944). We have not found any cases in Pennsylvania where intoxication, by itself, was sufficient to lower a homicide to voluntary manslaughter.

In view of the evidence as summarized above, it is clear not only that no error or abuse of discretion was committed by the trial judge, but furthermore, in our view the judge reached a result practically compelled by this evidence. Appellant's plea of guilty to murder in the second degree was in all respects valid, and judgment on that plea was properly entered.

Order affirmed.

Mr. Justice COHEN took no part in the consideration or decision of this case.