**UNITED STATES of America ex rel. Thomas COTTRELL, H–6511**

v.

**Alfred T. RUNDLE, Supt. State Corr. Inst., Graterford.**

**Misc. No. 69–184.**

United States District Court
E. D. Pennsylvania.

May 22, 1969.

Thomas Cottrell, in pro. per.
No appearance for defendant.

MEMORANDUM AND ORDER

JOHN MORGAN DAVIS, District Judge.

Before the Court is a petition for a writ of habeas corpus. After having been indicted for murder in the Court of Oyer and Terminer, Philadelphia, the relator initially entered a plea of not guilty

at his arraignment. At the time of trial on April 12, 1965, however, he changed his plea to guilty, with certification by the District Attorney that the crime did not rise higher than murder in the second degree. In accordance with the practice of the Commonwealth, the trial judge then conducted a degree-of-guilt hearing. At the conclusion of the hearing, the relator was adjudged guilty of murder in the second degree. A sentence of ten to twenty years imprisonment was imposed. No appeal was taken. On March 15, 1968, a Post Conviction petition was dismissed, after an evidentiary hearing. An appeal was taken to the Pennsylvania Supreme Court, which affirmed the Order of the Post Conviction Judge, on January 28, 1969. Commonwealth v. Cottrell, 433 Pa. 177, 249 A.2d 294. State remedies have been exhausted.

■ The Post Conviction hearing which was conducted in March of 1968 permitted the relator and his counsel to comprehensively set forth their evidence in support of the five allegations of error which are presently being asserted. Accordingly, there is no requirement for an additional evidentiary hearing. See e. g. United States ex rel. Ackerman v. Russell, 388 F.2d 21 (3rd Cir. 1968); United States ex rel. Darrah v. Brierley, 290 F. Supp. 960 (E.D.Pa.1968).

### I.

The relator first contends that the apprehending police elicited a statement from him without first having given the requisite "warnings".

■ Initially, we observe that the relator's trial commenced on April 12, 1965. The only "warnings" to which the relator would be entitled are in accordance with Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).[1] Briefly, this decision held that where a police investigation has progressed from the general investigatory stage to the accusatorial stage, the accused must be afforded the opportunity to consult with his coun-

sel, and must be warned of his right to remain silent. Unless this is accomplished no statement elicited by the police may be introduced against the accused at trial.

■ An examination of the transcripts does not indicate that the rule of Escobedo, was violated. First, at no time did the defendant contend that he requested, but was denied the assistance of counsel. Second, the statement which the defendant gave to the police was predicated with the warning that:

\* \* \* anything you say or sign concerning this stabbing can and will be used against you at the time of your trial in court. Understanding this, are you still willing to give a statement?

A. [By the relator] yes.

Q. Will you go on in your own words and tell us what happened?

The relator then proceeded to comprehensively describe the motivation and details surrounding the homicide. See Trial N. T. pp. 10–12.

Thus, it is apparent that the relator received the procedural due process to which he was entitled under Escobedo.

### II.

■ The relator next contends that a statement which he gave to the investigating detectives was involuntary. However, we note that at no time before or during trial did the relator assert that the statement was coerced, or that it was anything less than the product of his complete volition. At the Post Conviction hearing, the relator's counsel was interrogated specifically, and rather comprehensively regarding this allegation. When asked "In your judgment, was there any basis for having those statements excluded as being coerced? Counsel responded:

A. Not at that time.

Q. Under applicable existing law?

A. No, not even under existing law today [1968]. This was just a vol-

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 was decided over one year after the relator's trial, and was not retroactive.

unteered statement [P.C.N.T. pp. 23–24].

While we are not accepting counsel's *legal* opinion as dispositive of the question, it is of particular significance, since it indicates the lack of any *factual* basis upon which the statement could be regarded as other than voluntary.

The relator also contends that since he was under the influence of alcohol, the statement was not voluntary.

The investigating detective testified at the degree-of-guilt hearing, that although it was apparent that the relator had been drinking, " * * * he answered the questions in an intelligent manner when I asked him what he knew about the incident * * * ". See Trial N.T. pp. 28–29.

This is corroborated by the fact that the relator was apprehended about 7:00 P.M., but did not make his statement until 11:30 P.M., some 4½ hours later.

We also note that defense counsel again testified at some length regarding his attempts to obtain some medical experts who would proffer the opinion that intoxication may impair the voluntariness of a statement. However, after numerous conversations with psychiatrists throughout the United States, he was unsuccessful in finding even one physician who would so testify (P.C.N.T. pp. 19–22) on the contrary, they all indicated that intoxication would not detract from the voluntariness of an oral utterance. There is no basis for substantiating this allegation.

### III.

The Supreme Court correctly suggested that since the homicide was witnessed by the victim's son, who was prepared to come forward and so testify, the relator was well-advised to enter a plea of guilty, with certification of not more than second degree murder. Again, defense coun-sel shared in this view, indicating that "It would have been the eye witness' statement which was the crux of the whole thing" (P.C.N.T. p. 24). Confronted with this evidence, together with the distinct possibility that a jury could have quite properly found sufficient specific intent to return a verdict of first-degree murder, the relator simply accepted the most reasonable alternative. See Commonwealth v. Walters, 431 Pa. 74, 244 A.2d 757 (1968); Commonwealth v. Thompson, 381 Pa. 299, 113 A.2d 274 (1954); Commonwealth v. Jones, 355 Pa. 522, 50 A.2d 317 (1947).

### IV.

The relator next contends that counsel did not advise him of the possible defenses in the event that he elected to continue his plea of not guilty and go to trial. Suffice to say that counsel has testified to the contrary. See P.C.N.T. pp. 9–17; 31–33.

### V.

Finally, the relator asserts that the trial court erred in believing that a *prior* assault for which he was convicted, was perpetrated against the same victim of the homicide for which he was tried.

Assuming arguendo that the relator is correct, this does not rise to Constitutional error. The fact remains that the relator had numerous convictions for crimes of violence.[2] Having demonstrated a propensity for inflicting bodily harm, the trial court was indeed justified in imposing the maximum sentence authorized by statute. It cannot be disputed that each prior offense was of separate and distinct manifestation of the relator's *mens rea*. See United States ex rel. Darrah v. Brierley, supra.

For the aforementioned reasons, the petition is denied. In my opinion, there is no probable cause for appeal.

---

2. 1949: Aggravated assault and battery by stabbing.
   1955: Aggravated assault and battery.
   1962: Aggravated assault and battery, (against the victim of the homicide).