Commonwealth *v.* Swaney, Appellant.

Argued September 28, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Simon B. John,* Assistant Public Defender, with him *Thomas P. Ruane, Jr.,* Public Defender, for appellant.

*Gerald R. Solomon,* Assistant District Attorney, and *Joseph E. Kovach,* District Attorney, submitted a brief for the Commonwealth.

OPINION BY MR. JUSTICE O'BRIEN, December 20, 1971:

On October 21, 1970, after having a number of drinks, appellant, Earl Swaney, II (Earl Junior), returned to his parents' home, where he and the three children of his first marriage had been living after he separated from his second wife. Seriously troubled, financially and personally, because he was unable to afford a separate home for himself and his second wife and the child of their marriage, and she refused to live with him in his father's home, appellant immediately began to argue with his father, Earl Swaney, I (Earl Senior). The argument finally ended when appellant shot Earl Senior in the head. State Trooper Daniel Sochko, an old friend of the Swaney family, who had, surprisingly enough, witnessed the whole argument,

served as the principal witness at the degree-of-guilt hearing held after appellant had pleaded guilty to a general charge of murder. This case comes to us on direct appeal after a three-judge panel found appellant guilty of second-degree murder and sentenced him to a term of imprisonment of not less than ten nor more than twenty years.

Appellant raises only one issue on appeal: whether the evidence was sufficient to support a finding of second-degree murder rather than manslaughter.

Officer Sochko's testimony established that, while the officer sat watching "Johnny Cash" on television, appellant, grabbing his father's shirt, began demanding payment for his interest in bonds which he had once turned over to his father. As the argument picked up tempo, appellant, shouting or screaming loudly, threw an ashtray across the room. Officer Sochko, still watching "Johnny Cash," could not make out all of the other issues discussed at that time, but did remember that appellant next threw a coffee table across the room. Although the officer did intervene to separate son from father, at the request of appellant's mother, he soon returned to "Johnny Cash."

Meanwhile, appellant disappeared for a moment and returned clutching a shotgun, but since he was shouting "I'm not gonna shoot anybody," Officer Sochko, noticing that the gun wasn't loaded, continued watching television while appellant left the room again. When appellant returned, still clutching the gun, Officer Sochko noticed that the gun was now loaded. Nevertheless, since appellant continued protesting repeatedly that he wasn't going to shoot anybody, Officer Sochko remained glued to the TV, even when appellant threw the loaded gun across the room into the entrance-way. The gun lay where it was thrown for a few minutes while appellant, apparently calmed down,

made a telephone call, and the officer and appellant's father continued watching TV.

When he had completed his call, appellant went to retrieve the gun. The next time the officer looked, appellant was holding the gun, with the muzzle pointed down, across from his father. Since the officer was concentrating on TV, he didn't remember appellant's exact position, but he does remember that appellant began shouting at his father, accusing him of attempting to have sexual intercourse with appellant's first wife. Earl Senior denied that, and appellant kept shouting "But you tried, didn't you? You tried, didn't you, didn't you?" Then the officer heard a shot, looked up from his TV and saw that appellant had shot his father through the head.

Appellant, relying on Officer Sochko's testimony, and that of a defense psychiatrist, argues that when he shot his father, he was in a state of uncontrollable rage which should make him guilty of no more than voluntary manslaughter and, consequently, it was an abuse of discretion for the court en banc to find him guilty of second-degree murder.

As we have frequently said, a plea of guilty to murder generally: "When properly made . . . is sufficient of itself to sustain a conviction for murder in the second degree. . . . [I]f the defendant desires to reduce the crime to that of voluntary manslaughter, the burden is upon him to adduce evidence which will so mitigate the offense." *Commonwealth v. Brown*, 436 Pa. 423, 260 A. 2d 742 (1970), quoting *Com. ex rel. Kerekes v. Maroney*, 423 Pa. 337, 340, 223 A. 2d 699, 701 (1966).

Here, appellant may have shown that he was in a state of uncontrollable rage (although some attempt by the officer might have controlled it). However, to prove voluntary manslaughter, there must be "sufficient cause of provocation and a state of rage or pas-

sion, without time to cool, placing the prisoner beyond the control of his reason and suddenly impelling him to the deed." *Commonwealth v. Brown, supra,* at 427, quoting from *Commonwealth v. Walters,* 431 Pa. 74, 82, 244 A. 2d 757, 762 (1968).

The grievances which apparently drove appellant to his uncontrollable rage, whether or not they were a sufficient cause of provocation, were grievances of long standing, in which case appellant certainly had time to cool. While a verdict of voluntary manslaughter was within the court en banc's discretion, a failure to reach such a verdict is supported by the record.

Judgment of sentence affirmed.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.