**Commonwealth v. Mills**

*Edward Bell,* for Commonwealth.

*Warren Keck, 3rd,* for defendant.

ACKER, J., July 25, 1970.—This case has been returned by the Superior Court for an evidentiary hearing by order of June 4, 1970. On July 7, 1970, that hearing was held. As a result thereof, this court makes the following findings of fact.

## FINDINGS OF FACT

1. On November 8, 1968, petitioner armed with a fully loaded revolver strapped upon his hip in a holster and a loaded shotgun went to the Horseshoe Lounge on North Water Avenue in the City of Sharon and perpetrated an armed robbery.

2. Defendant was laid off from his regular employment at the time of this occurrence and was drawing $90 per week compensation, having been paid Monday of the week on which this event occurred, being a Friday.

3. On November 8, 1968, being the date of this occurrence, defendant commenced drinking in the morning and drank off and on during the course of the day and by evening had used up most, if not all, of his money.

4. He returned home at about 9 at night and left after an hour or two for the Horseshoe Lounge, armed with a shotgun and revolver. Although petitioner claimed not to have any recollection of entering the Horseshoe Lounge or his conduct therein, with the exception of seeing a light and remembering a shotgun blast at the time of this hearing, his recollection

to his attorney, Michael Wherry, was much clearer during the preparation for trial.

5. The attorney met with petitioner approximately five times between December 10, 1968, and March 4, 1969, for periods varying from one and one-half hours to two and one-half hours and on several occasions with petitioner's entire family prior to petitioner's election to enter a guilty plea. The meetings were held in the Public Defender's office in the courthouse. He informed his attorney that he could remember going into the bar and shooting at the lights in the bar, he remembered shooting the light out over the cash register. At the time of his guilty plea, defendant informed this court that he didn't know everything about what he did on the evening of the crime; that he did remember that he was out of beer and that he was shooting a street light out; that he had robbed a place and that the people there knew him. He remembered going to the place, but not for the purpose of robbing them; that he remembered that his guns were with him when he went into the place; and that after being in the Sharon City Jail he told the officer he had the money on him.

6. Petitioner's court-appointed attorney fully explained to petitioner all of the elements of robbery while armed or by violence.

7. Petitioner's attorney informed petitioner that the question of intent is always for the jury; that he felt that he could get the court to charge upon intoxication as a defense; that he felt that there was a serious question of whether a jury would believe petitioner's claim that he was as intoxicated as he professed at the time of the robbery.

8. Petitioner's attorney told him that he would receive no greater or less sentence if he went to trial and was found guilty than if he pled guilty, but that

on occasions during the course of the trial facts are developed which might not otherwise come to the attention of the court that could affect the amount of sentence that he would receive.

9. Petitioner's court-appointed attorney fully explained to petitioner the nature of the offense and all its elements, the defenses that would be available, his opinion of the chances of success, the range of punishment and all other matters inquired into by defendant and then left the decision as to whether to plead guilty or not guilty solely to petitioner.

10. Petitioner's attorney told him of his right to a jury trial.

11. Petitioner was represented by an attorney at the preliminary hearing who continued to represent him down to and including his sentence.

12. Petitioner's attorney informed petitioner that his guilty plea before the justice of the peace was inadmissible and that any subsequent proceeding could not be used against him whatsoever.

13. Petitioner's attorney, Michael J. Wherry, had represented petitioner previously and knew of his background, mentality and overall situation.

14. There was nothing unusual about petitioner's behavior at the hearing before the justice of the peace.

15. While petitioner was in the Mercer County Jail, special attention was given to him by Michael J. Wherry, the Public Defender, because petitioner had previously been put on probation for pointing a deadly weapon and the Public Defender's investigator, Earl Holby, former Chief of Police of Sharon, had been signing petitioner's parole cards. Holby reported regularly to the Public Defender concerning petitioner while in the Mercer County Jail. Petitioner was not informed on any occasion that he was required to plead guilty to see the Public Defender.

16. That petitioner desired to plead guilty prior to his actually entering the plea and asked his attorney what he should do, but that the attorney informed him that it must be his decision.

17. Petitioner was advised by his attorney before he entered his plea that there was no understanding with the court as to his sentence and that such matters were never discussed.

18. Petitioner decided himself that it was to his best interest to plead guilty. He was not informed that he would get more time if he stood trial and was convicted.

19. Defendant, Mills, knew what he was doing at the time of the commission of the robbery and was not in a state of shock or altered consciousness.

20. Defendant, Mills, knew what he was doing at the time that he appeared before the justice of the peace and was not in a state of shock or altered consciousness.

21. Defendant, Mills, knew what he was doing when he entered his guilty plea and was not in a state of shock or altered consciousness.

22. Defendant, Mills, knew what he was doing at the time he appeared for sentencing and was not in a state of shock or altered consciousness.

The purpose of the continued hearing in this case was to elicit the evidence of petitioner and any witnesses that he may desire as to the factual contentions contained in the petition, as well as to hear any responsive testimony offered by the Commonwealth. Although petitioner's wife was present throughout the proceedings, petitioner did not elect to call her as a witness. He relied solely upon his own testimony.[1]

---

[1] The wife's testimony might have been able to corroborate the contention of petitioner that he was helplessly drunk and that he loaded his revolver and shotgun and requested his wife to kill him.

Petitioner's counsel, the district attorney and the court all attempted to elicit from petitioner what he meant in his petition when he claimed that he pled guilty "while in a state of altered consciousness," and later checked that he was eligible for relief "while in a state of shock and altered consciousness." In his petition he also claims that he was in a state of altered consciousness before the justice of the peace and at the hearing on April 18th and while before the court. After considerable examination, it would appear that petitioner meant that he "wasn't given the true facts by his attorney." He claimed that he was only guilty of being drunk and disorderly. While before the court entering his guilty plea he meant by shock and altered consciousness that he didn't know what was happening. He didn't know which way to go. He also defined "altered consciousness" as not knowing the facts and stated that if he had known the facts he would not have pleaded guilty. He never informed the court of what facts he was referring to, but a reasonable assumption is the sentence of two to five years. In his petition for post-conviction relief, petitioner relied upon Commonwealth ex rel. Hilberry v. Maroney, 417 Pa. 534, 207 A. 2d 794 (1965). This case is discussed in the first opinion, at pages 8 and 9. That defendant had been in a State mental hospital where it had been concluded that there is "no doubt that at the time of the commission of the crime he had lost his hold on reality and was driven to the act with probably no thought of resisting impulse." The court failed to make specific inquiry of petitioner as to whether his plea was voluntarily and intelligently made. That, when coupled with his total history, caused a conclusion that petitioner may at the time that he entered his plea have been mentally ill and unable to comprehend his position as one accused of murder and to

cooperate with his counsel. All of the evidence in the instant case is to the contrary. Defendant had been referred to Warren State Hospital and had been examined by a psychiatrist and psychologist for petitioner through his attorney. No one concluded that defendant could not stand trial or did not understand the nature of the proceedings.

The significant development from the post-conviction hearing is that the attorney fully informed defendant as to his possible defense of voluntary intoxication negating the mental element in the crime of robbery. That mental element is the "intent to rob."[2]

This court is aware that when an accused at the time of arraignment does not know or asserts that he does not know whether he has committed a crime, a plea of guilty to the crime should be accepted with great caution. That, however, will not prevent the acceptance of the plea: Commonwealth v. Cottrell, 433 Pa. 177, 249 A. 2d 294 (1969). However, it is equally true that when an accused pleads guilty to an indictment, he is presumed to be aware of what he is doing so that the burden is ordinarily upon the accused to prove that he did not enter his plea of guilty knowingly. The issue is a matter of credibility and the court may refuse to believe the accused's version of what happened: Commonwealth v. Cushnie, 433 Pa. 131, 249 A. 2d 290 (1969). The testimony of petitioner that he did not know that he was perpetrating a robbery is not believed. Although it is recognized that memories dim as they pass from the event, there is a substantial difference in his recollection between his appearance at the time of entering his guilty plea and that testified in his post-conviction hearing. This court concurs in the conclusion of his attorney that it would

[2] Act of June 24, 1939, P. L. 872, sec. 704, 18 PS §4704.

be very doubtful whether a jury would accept his version of being so drunk that he did not know that he was perpetrating the act. He was able to load both his shotgun and his revolver, strap his revolver holster upon his hip, to walk to the Horseshoe Lounge without getting lost, to shoot out street lights along the way, to order a beer in the lounge, get the money, force patrons away from the bar and the pinball machine, to bring a patron back into the lounge who desired to leave, to take the money from the bar and to remember that he had it in jail several hours later and bring it to the attention of the police officer, to shoot out the lights immediately past the head of the barmaid over the cash register when she did not get the money for him, and to get a quart of beer out of the cold cooler. The factual situation after the conclusion of this court that defendant did, in fact, know what he was doing brings it close to that of Commonwealth v. Minnick, 432 Pa. 462, 247 A. 2d 569 (1968), and Commonwealth ex rel. Crosby v. Rundle, 415 Pa. 81, 202 A. 2d 299 (1964). The believability of petitioner's version of his lack of memory of the events is a matter of credibility and this court may, and does, refuse to believe that petitioner did not comprehend what he was doing at the time of the burglary: Commonwealth v. Cushnie, supra.

As to the contention that intoxication was not explained to him as a defense, it suffices to say that this court found the testimony of Attorney Michael Wherry to be forthright and credible and accepted as a fact that the petitioner was informed that intoxication would be a defense.

The extent of intoxication as a defense in Pennsylvania is that a criminal act committed while in a state of voluntary intoxication, no matter how gross and long-continued the intoxication may be, is not a de-

fense: Commonwealth v. Eyler, 217 Pa. 512, 66 Atl. 746 (1907). If the offense be that of homicide where the issue of premeditation is to be presented to a jury, there is no doubt that voluntary intoxication may be sufficient to reduce the offense from first to second-degree murder: Commonwealth v. Chapman, 359 Pa. 164, 58 A. 2d 433 (1948); Commonwealth v. Thompson, 381 Pa. 299, 113 A. 2d 274 (1955); Commonwealth v. Brabham, 433 Pa. 491, 252 A. 2d 378 (1969). Where, however, the offense does not contain a specific intent, voluntary intoxication will not be a defense to the formation of a general intent for the commission of a crime such as assault and battery (Esmond v. Liscia, 209 Pa. Superior Ct. 200, 224 A. 2d 793 (1966)), or apparently involuntary manslaughter: Commonwealth v. Reid, 432 Pa. 319, 247 A. 2d 783 (1968). Interestingly, where murder is committed in the perpetration of a robbery or burglary, it is irrespective of the question of intent, murder in the first degree and the fact that defendant may have been drinking to excess could not be used as a legal excuse bearing upon the degree of the crime: Commonwealth v. Simmons, 361 Pa. 391, 65 A. 2d 353 (1949), cert. den. 70 S. Ct. 96, 338 U. S. 862, 94 L. Ed. 2d 528, reh. den. 70 S. Ct. 181, 338 U. S. 888, 94 L. Ed. 2d 546.

The defense of intoxication has, however, been at least inferentially acknowledged as to the offense of larceny (Commonwealth v. Ault, 10 Pa. Superior Ct. 651, 653 (1899)); of assault with intent to commit rape (Commonwealth v. Heatter, 177 Pa. Superior Ct. 374, 111 A. 2d 371 (1955)); fraudulent pretenses (Commonwealth ex rel. Dunbar v. Keenan, 196 Pa. Superior Ct. 592, 176 A. 2d 135 (1961), cert. den. 371 U. S. 839, 9 L. Ed. 2d 74, 83 S. Ct. 65)); and taking a letter containing a check from an authorized depository for

mail: United States v. Anderson, 409 F.2d 836 (1969).

In Commonwealth v. Hart, 101 Pitts. L. J. 449 (1952), defendant, as in the instant case, was charged with armed robbery, as well as carrying a concealed weapon. The lower court refused to permit intoxication as a defense. The court en banc reversed, holding that both armed robbery and carrying a concealed weapon require a specific intent as an essential element, stating, at page 450: "One may not escape conviction of criminal guilt by showing that his voluntary intoxication removed his capacity to entertain general criminal intent." This is the most outright statement and declaration on voluntary intoxication being a defense in crimes other than murder. Some doubt may be cast upon the decision, however, by Commonwealth v. Simmons, supra, where it was held that a murder committed in the perpetration of a robbery could not be reduced from first to second degree irrespective of the question of intent and intoxication. It would appear that if the conviction for murder stands upon a robbery, all of the necessary elements of the robbery would be required to be established beyond a reasonable doubt and that intoxication could be raised as a defense to that robbery. However, the Supreme Court has held to the contrary.

The contention that counsel failed to inform petitioner what sentence he could receive is absolutely without foundation. Not only was he informed by his attorney, but also prior to the time of his pleading guilty by the court. Finally, he acknowledged and admitted himself at the post-conviction hearing that he knew the sentence.

The testimony of petitioner that his attorney would not see him unless and until he agreed to plead guilty

is absolutely unbelievable and is not accepted by this court. He was counseled by his attorney on four or five occasions, several of which were with his entire family for periods of one and one-half to two and one-half hours. The decision to enter a guilty plea was clearly his. His only problem was that he could not accept the advice of his attorney that a jury would probably not acquit him because of his voluntary drunkenness. He weighed the matter himself and arrived at his own conclusion. ·

Defendant contends that the record does not show a waiver of a jury trial as required by statute. Defendant did not waive a jury trial, but rather elected to plead guilty. Therefore, the statute and procedural rules are not applicable.

### ORDER

And now, July 25, 1970, the prayer of the petitioner for post-conviction relief is denied.