Commonwealth *v.* DelMarmol et al., Appellants.

Argued September 13, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Edward F. Kane,* for appellants.

*Richard A. Devlin,* Assistant District Attorney, with him *Richard S. Lowe,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., November 11, 1965:

This appeal is taken from the judgments of sentence imposed by the Court of Quarter Sessions of Montgomery County after both appellants were convicted by a jury of burglary and conspiracy to commit burglary. Appellant, Scanlon, was sentenced to pay a $10 fine and the costs of prosecution and to undergo imprisonment in a state institution for not less than four nor more than fifteen years. Appellant, DelMarmol, was sentenced to pay a $10 fine and the costs of prosecution and to undergo imprisonment in a state institution for not less than seven nor more than fifteen years.

The Commonwealth's case consisted of the following: On the afternoon of Friday, July 19, 1963, at about 4 p.m. Miss Mercy Essig was sitting on a sofa in her family's apartment at 403 Lancaster Avenue, Haverford, with her boy friend. The apartment is on the third floor of a three story apartment building. While so seated, Miss Essig heard a noise outside the front door. There was no knock. Suspicious of the noise, Miss Essig walked over to the door which was unlocked. She got to within a foot of the door, when it was opened from the outside. She saw DelMarmol, "sort of crouched", open the door and look up. When he saw her, he said "Oh", and closed the door rapidly. When she re-opened the door, DelMarmol and another person were running down the steps. She noticed that DelMarmol had something red in his hand when he was going down the steps. Miss Essig's boy friend testified that he looked out the window and saw the appellants leave, hugging close to the building. He pursued them and hailed a policeman. Scanlon came over to the

policeman when requested to do so. He told the police-
man that he had not been in the apartment house and
was alone. DelMarmol went into a jewelry store. An
employee of the jewelry store testified that DelMarmol
came into the store, walked around, and then went
down to the basement. He was observed standing and
listening at the foot of the steps. When accosted by
the employee, he asked for the men's room and when
directed there, went in. The policeman apprehended
DelMarmol as he came out of the men's room.

A search of Scanlon's person uncovered a magnify-
ing glass which was red and a pen flashlight. Del-
Marmol had nothing unusual on his person. An em-
ployee of the jewelry store was permitted to testify,
over objection, that he found a black and silver pen-
knife on a counter in the china department the follow-
ing Monday morning. He testified that DelMarmol
would have passed this china section the previous Fri-
day afternoon and that the store was locked over the
weekend. A detective was permitted to testify, over
objection, that he examined the apartment door three
days after the alleged burglary and found that it ap-
parently stuck when unlocked.

Appellants did not take the stand, but on cross-
examination of a police detective it was stated that one
of the appellants told the detective that he had come
to the apartment house looking for his girl friend named
Mary Walsh. Appellants' demurrer was refused as was
their motion for binding instructions. The jury re-
turned verdicts of guilty. Appellants' motions for a
new trial and in arrest of judgment were refused.

The first question raised by the appellants is
"Whether the Commonwealth produced sufficient evi-
dence to establish that the appellants entered the
apartment building with the intent to commit larceny?"
After a careful review of the record, we are satisfied
that there was sufficient admissible evidence from

which the jury could find an intent to commit larceny when appellants entered the apartment building.

Section 901 of The Penal Code, Act of June 24, 1939, P. L. 872, 18 P.S. 4901, defines the crime of bur-' glary as follows: "Whoever, at any time, wilfully and maliciously, enters any building, with intent to commit any felony therein, is guilty of burglary." The elements of burglary are the intent to commit a felony and the successful and effective overt act directed toward the commission of the felony by the wilful and malicious entry into a building. *Commonwealth v. Procopio*, 200 Pa. Superior Ct. 226, 188 A. 2d 773 (1963); *Commonwealth v. Schultz*, 168 Pa. Superior Ct. 435, 79 A. 2d 109 (1951), cert. denied 342 U.S. 842. Felonious intent, the only element contested in this case, may be inferred from actions as well as words provided those actions bear a reasonable relation to the commission of the felony. *Commonwealth v. Ellis*, 349 Pa. 402, 37 A. 2d 504 (1944); *Commonwealth v. Bova*, 180 Pa. Superior Ct. 359, 119 A. 2d 866 (1956).

In this case, two strangers to the community were present on the third floor of an apartment building in Haverford, with flashlight and magnifying glass, tampering with the door of the Essig apartment. When they opened the door and found the apartment occupied, they hurriedly left, hugging the apartment building as they walked along the street, and then separated. One gave false and contradictory statements to mislead the police officer who apprehended him, which is itself indicatory of guilt. *Commonwealth v. Lowry*, 374 Pa. 594, 98 A. 2d 733 (1953), cert. denied 347 U.S. 914. The other went into a jewelry store basement and men's room, where he was caught. From these actions a jury could infer that appellants entered the apartment building with intent to commit larceny therein, and not merely to visit a Mary Walsh who was not a tenant in that building or the one next to it. The fact

that the jury chose to disbelieve appellants' explanation and to infer an intent to commit larceny from appellants' unusual and surreptitious activities does not mean that its decision was based on conjecture and surmise as in *Commonwealth v. Ellis,* supra. In that case, where the jury found Ellis guilty of "an attempt to break and enter building [sic] with intent to commit rape", there was "no evidence of an intention to commit any felonious act" by Ellis, who was an acquaintance of the home owner and who entered an open door while the home owner was in her neighbor's home.

What was said in *Commonwealth v. Abdo,* 162 Pa. Superior Ct. 622, 624, 60 A. 2d 419 (1948), is appropriate here:

"The designs of the heart can rarely be proved in a direct manner by the testimony of witnesses. When a man designs to perpetrate a scheme of wickedness, he seldom communicates his intention unless to an accomplice; hence, the [specific] intent must in most cases be collected from the circumstances . . ."

We are unwilling to hold that the jury could not reasonably infer an intent to commit larceny from the facts presented in this case. Though the evidence was circumstantial, it is not the law that the circumstantial evidence must be such as to exclude every other reasonable possibility, except that of guilt. *Commonwealth v. Olitsky,* 184 Pa. Superior Ct. 144, 133 A. 2d 238 (1957). The circumstances proved should be such as reasonably and naturally to justify an inference of the guilt of the accused, and of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt. *Commonwealth v. Nasuti,* 385 Pa. 436, 123 A. 2d 435 (1956). We are of the opinion that the evidence, though circumstantial, was sufficient to go to the jury in this case.

Appellants complain that the trial judge committed reversible error in permitting a police officer to testify concerning the condition of the apartment door three days after the incident and in admitting into evidence a penknife, magnifying glass and clip-on pen flashlight. We find no error in the admission of the latter two items since they were taken from the person of Scanlon by the police officer who searched him as soon as he was apprehended. The evidence was relevant in that the magnifying glass was red and there was testimony that one appellant had something red in his hand while running down the steps. The flashlight was possibly relevant on the issue of intent.

The penknife, however, should not have been admitted and the testimony by the officer that it "can be used to slip a lock, slip back the bolt on a lock" should have been stricken, and the jury instructed to disregard it. Merely sustaining the objection, as the court below did, was insufficient under these circumstances. This knife, which was not red, was found in the china section of the jewelry store on the Monday morning after the incident at issue. No one saw either appellant put it there. There was no testimony that either appellant had a knife and there was no evidence of knife marks on the door. The employee who found it admitted that he had no idea how many customers passed the china section that Friday and couldn't recall whether he had even dusted in the china section that Friday morning. It could have been left there by any number of customers all day Friday or even Thursday or by a shipping clerk or by a janitor over the weekend. Since there was no evidence connecting a knife with the alleged crime and the barest scintilla of circumstantial evidence connecting DelMarmol with the knife, to admit the knife and let the jury decide its ownership and relevancy was error. *Commonwealth v. Johnson*, 213 Pa. 607, 63 A. 134 (1906). When con-

sidered in conjunction with the officer's testimony as to its possible use, which the jury heard, the error was prejudicial. As Wigmore aptly points out, "there is a natural tendency to infer from the mere production of any material object, and without further evidence, the truth of all that is predicated of it." IV Wigmore, Evidence §1157 (3rd ed. 1940). Absent sufficient proof of connection, the knife was irrelevant and in this case prejudicial.

It was also error to allow the police officer to testify that the door to the Essig apartment was stuck when he tried it on Monday, July 22nd, three days after the incident at issue. It is true that whenever the condition of a particular place at a certain time is in question, evidence of its condition at a prior or subsequent time is admissible *if accompanied by proof that it has not changed in the meanwhile*. *Ferruzza v. Pittsburgh*, 394 Pa. 70, 145 A. 2d 706 (1958); *Nestor v. George*, 354 Pa. 19, 46 A. 2d 469 (1946). Here, there was no attempt by the Commonwealth to show that there was no change in the door over the three day period. If the door stuck on the date in issue, it would have been an easy matter to have Miss Essig's boy friend so testify since the testimony indicates that he used the door that Friday. This testimony could have some bearing on the issue of intent which was the pivotal point at issue in the case and it is impossible to tell what influence it had on the jury's verdict.

We are of the opinion that the possible prejudice arising from the admission into evidence of the penknife and the testimony concerning the door requires a new trial in the interest of justice. See *Commonwealth v. Blose*, 160 Pa. Superior Ct. 165, 50 A. 2d 742 (1947).

Judgments of sentence reversed and new trials granted.

WRIGHT, J., would affirm on the opinion of the court below.