## Commonwealth *v.* Brabham, Appellant.

492

Argued November 14, 1968.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Morrison B. Williams,* with him *Harold N. Fitzkee, Jr.,* for appellant.

*John T. Miller,* First Assistant District Attorney, with him *John F. Rauhauser, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, April 23, 1969:

On the afternoon of Friday, September 9, 1966, the defendant, John Brabham, and a fellow-worker left their place of employment, cashed their paychecks, purchased some liquor and wine, and started to drink. Later the same day, they met some friends; they also met Janette Johnson, whom they had not known previously. Brabham, during the course of the evening, gave Janette a $20 bill to purchase some whiskey. She neither purchased the whiskey nor returned the $20 to Brabham, but did leave Brabham's company to go to the Naples Cafe in York. About 9 P.M., Brabham walked into the Naples Cafe and, after making threats to Janette with regard to the money, he was put out of the cafe. A few minutes later, he returned, walked to the rear of the cafe where Janette was seated at a table, pulled out a .22-caliber revolver, and shot her through the neck. She died several weeks later from the wound. Brabham then went outside and gave the gun to his co-worker, who did not go back in after Brabham had been evicted earlier. Brabham returned inside and waited for the police, who arrived within a matter of minutes after the shooting.

Brabham was indicted for murder and manslaughter, and on January 11, 1967, was convicted by a jury of second-degree murder. His defenses were (1) the killing was unintentional and accidental, and (2) it was in self-defense, and (3) he was intoxicated. Defendant's motions for a new trial and in arrest of judgment were denied, and on December 18, 1967, Brabham was sentenced to a term of imprisonment of not less than ten nor more than twenty years. From this judgment of sentence, he now appeals.

The principal contention of the defendant relates to the trial Court's charge on the issue of intoxication as

a defense. Defendant contends that the Court withdrew from the jury any consideration of defendant's state of alleged intoxication when it charged: "[T]here is no testimony in this case that this man was so under the influence of intoxicating liquor that his mental faculties were affected to the degree that he could not form the intent to commit and to perform the acts which he in fact did, if you believe that he did do the things which the witnesses have testified that he did."

Defendant forgets that the Court further charged: "Now of course intoxication may be a defense to crime, but in order for intoxication to be a complete defense to crime it must exist to such an extent that the person is not able to form an intent to commit the crime itself . . . ."

As this Court recently and pertinently said in *Commonwealth v. Reid*, 432 Pa. 319 (page 322): "Generally speaking, voluntary drunkenness neither exonerates nor excuses a person for his criminal acts. Commonwealth v. Simmons, 361 Pa. 391, 65 A. 2d 353 (1949); cert. denied, 338 U.S. 862, 70 S. Ct. 96 (1949). However, where the charge is felonious homicide, intoxication which is so great as to make the accused incapable of forming a wilful, deliberate, and premeditated design to kill, or incapable of judging his acts and their consequences, may serve to reduce the crime of murder from the first to the second degree. Commonwealth v. Simmons, supra. See also Commonwealth v. Walters, 431 Pa. 74, 244 A. 2d 757 (1968)."

We find no error in the Court's charge.

Defendant also contends that the trial Court erred in permitting the Commonwealth to plead surprise and to cross-examine one of its witnesses. The Commonwealth had called this witness who had been present at the scene of the killing and who had given the police a written statement. In this statement, the wit-

ness had made no mention of a knife, but at the trial he testified that immediately after the shooting he saw a butcher knife on the floor beside the victim, with the handle lying across her hand. Evidently the testimony with respect to the knife was developed in connection with the defense of self-defense, although none of the other eyewitnesses testified to seeing a knife. At the conclusion of this witness's statement to the police, he was asked whether there was anything he could add, but he replied that he could think of nothing. The trial Court permitted the Commonwealth to cross-examine the witness, limited to his failure to refer to the alleged knife in his statement. The presence of a knife in describing a murder scene is of such material importance that we cannot say that the trial Court abused its discretion in permitting the Commonwealth to resolve the inconsistency between the testimony and the statement.

The remaining contentions of the defendant are wholly without merit.

Judgment of sentence affirmed.