334 A.2d 661
**COMMONWEALTH of Pennsylvania**

v.

**Daniel Lee GRAVES, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 10, 1974.

Decided March 18, 1975.

James C. Hogan, Easton, for appellant.

Charles H. Spaziani, Dist. Atty., John E. Gallagher, 1st Asst. Dist. Atty., Easton, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Daniel Lee Graves was convicted by a jury in Northampton County for first degree murder, robbery and burglary. After denial of post-trial motions and the imposition of a sentence of life imprisonment under the murder indictment, this appeal was filed.[1]

On September 28, 1971, Daniel Graves, appellant, and his cousins, Thomas and Edward Mathis, pursuant to a prior conceived plan, burglarized the residence of one Sebastiano Patiri, a 75 year old man and robbed him. During the course of the robbery and burglary, Mr. Patiri sustained injuries which resulted in his death.

Appellant Graves testified at trial that on the day of the incident he consumed a quart or more of wine and had taken a pill which was a form of Lysergic Acid Diephylanide (LSD). Appellant testified that he began hallucinating and saw "cars jumping over each other", as well as other strange phenomena. He then became unconscious and suffered limited amnesia, thus he contended that he had no recollection of the occurrence at the Patiri home.

The defense called a Dr. Sadoff, a professional psychiatrist who testified that he initially saw Graves on February 29, 1972, and then again on May 16th of that year. As a result of this examination and evaluation, which in-

---

1. Separate concurrent prison sentences of five to ten years were imposed on the robbery and burglary convictions. These appeals are before us pursuant to the Act of July 31, 1970, P.L. 673, No. 223, art. V, § 503, 17 P.S. § 211.503.

cluded a polygraph and a sodium amytal test, he determined that Graves was telling the truth when he stated that he was under the influence of the wine and the LSD tablets during the afternoon of September 28, 1971. The doctor testified that in his opinion, appellant was under the influence of the two intoxicants and at the time of the Patiri attack "his mind was such that he wasn't able to form the proper conscious intent to take a life, to assault." Defense counsel then attempted to elicit from the doctor an opinion as to whether or not Graves at the time of the incident "could consciously form the specific intent to take or steal from a person or individual." An objection to this question was sustained and this ruling is assigned as error. Concomitantly, it is argued that the trial court erred in refusing a request to charge the jury that if they found Graves incapable of forming the intent to commit burglary or robbery because of the consumption of wine or the ingestion of the drug, or both, he could not be guilty of these offenses.[2]

Relying on this Court's decision in *Commonwealth v. Tarver*, 446 Pa. 233, 284 A.2d 759 (1971), the trial court concluded that evidence of intoxication was irrelevant as to the robbery and burglary charges. Regrettably, although the trial court was adhering to a pronouncement of this Court, this ruling was erroneous and the judgments of sentence must now be reversed.

In *Commonwealth v. Tarver, supra,* this Court stated:

"If the charge is *felonious* homicide, intoxication, which is so great as to render the accused incapable of forming a wilful, deliberate and premeditated design to kill or incapable of judging his acts and their consequences, may properly influence a finding by the trial court that no specific intent to kill existed, and hence to conclude the killing was murder in the second degree. See *Commonwealth v. Ingram*, supra, 440 Pa.

---

**2.** Because of our disposition of this issue it will not be necessary to discuss appellant's other assignments of error.

239, 270 A.2d 190, and *Commonwealth v. Jones*, 355 Pa. 522, 50 A.2d 317 (1947). Although it is clear that this Court has employed the aforementioned rule to *lower the degree of guilt* within a crime, the crime still remains at murder. This Court has never extended the rule to lower murder in the second degree to voluntary manslaughter, nor has it applied this principle to any other crime outside of *felonious* homicide. Thus, exemplifying the fact that the rule has never been applied where its effect would change the nature of the crime, we have always limited its application to changing degrees within a crime. See *Commonwealth v. Ingram*, supra; *Commonwealth v. Brown*, 436 Pa. 423, 260 A.2d 742 (1970); *Commonwealth v. Walters*, 431 Pa. 74, 244 A.2d 757 (1968); *Commonwealth v. McCausland*, 348 Pa. 275, 35 A.2d 70 (1944); *Commonwealth v. Walker*, 283 Pa. 468, 129 A. 453 (1925). Since there are no analogous degrees of robbery, the principle has no application and defendant's acts are a felony, notwithstanding his alleged intoxication." Id. at 239–240, 284 A.2d at 762. (Footnote omitted) (Emphasis in original).

In reaching its conclusion that evidence of intoxication is limited to reducing the degree within a crime and may not be introduced to change the nature of the crime, the *Tarver* Court clearly misconceived the underlining basis for the relevance of evidence of intoxication in criminal matters. It is fundamental law in this jurisdiction that voluntary intoxication neither exonerates nor excuses criminal conduct. *Commonwealth v. Ingram*, 440 Pa. 239, 270 A.2d 190 (1970); *Commonwealth v. Brabham*, 433 Pa. 491, 252 A.2d 378 (1969); *Commonwealth v. Reid*, 432 Pa. 319, 247 A.2d 783 (1968); *Commonwealth v. Simmons*, 361 Pa. 391, 65 A.2d 353 (1949), cert. denied, 338 U.S. 862, 70 S.Ct. 96, 94 L.Ed. 528, reh. denied, 338 U.S. 888, 70 S.Ct. 181, 94 L.Ed. 546. The only permissible probative value evidence of intoxi-

cation may have in criminal proceedings is where it is relevant to the question of the capacity of the actor to have possessed the requisite intent of the crime charged. Where the legislature, in its definition of a crime, has designated a particular state of mind as a material element of the crime, evidence of intoxication becomes relevant if the degree of inebriation has reached that point where the mind was incapable of attaining the state of mind required. It must be emphasized that although evidence of intoxication never provides a basis for exoneration or excuse, it may in some instances be relevant to establish that the crime charged in fact did not occur.[3]

Rejecting the view that an evidentiary rule relating to the introduction of evidence of intoxication must be strictly construed to avoid condoning voluntarily induced intoxication, most text writers have recognized the issue as being whether the crime in fact has been committed and considered the question accordingly:

"Where a particular purpose, motive, or intent is a necessary element to constitute the particular kind or degree of crime, it is proper to consider the mental condition of accused, although produced by voluntary intoxication, and, where he lacked the mental capacity to entertain the requisite purpose, motive, or intent, such incapacity may constitute a valid defense to the

3. "Suppose on the other hand D has been arrested for larceny, having been found walking off with X's glass which he had no privilege or authority to carry away. Suppose again the only explanation he has to offer is that he was voluntarily drunk at the time and did not know what he was doing, the evidence indicating that he staggered away from the bar where he had been over-indulging and walked out into the street still clutching the glass from which he had been drinking, but too befuddled by liquor to know he was holding anything in his hand,—and when the glass was taken from him by the apprehending officer D stared at it blankly with no idea where it came from. The *actus reus* of larceny is the trespassory taking and carrying away of the personal property of another. D has done this and his voluntary intoxication is no excuse, but the facts stated fail to establish larceny." (Footnotes omitted). Perkins, Criminal Law, ch. 8, § 3 at 788 (1957).

particular crime charged, and the same rule applies to voluntary intoxication resulting in mental incapacity to indulge premeditation or deliberation, which precludes conviction of an offense wherein premeditation is essential,

. . . . . . . .

The majority rule, holding intoxication to an extent precluding capacity to entertain a specific intent or to premeditate to be a defense, does so not because drunkenness excuses crime, but because, if the mental status required by law to constitute crime be one of specific intent or of deliberation and premeditation, and drunkenness excludes the existence of such mental state, then the particular crime charged has not in fact been committed.

Where a specific intent is an ingredient of the crime charged, the fact that accused's drunkenness is voluntary does not render the defense of intoxication incompetent, since the intent to become intoxicated does not tend to prove an intent to commit the offense." (Footnotes omitted). 22 C.J.S. Criminal Law § 68, pp. 217–219.[4]

Relying on a number of decisions [5] that were *only concerned* with the application of intoxication evidence in

4. Some text writers have even gone further and suggested that we should not limit the rule to those crimes which we have traditionally accepted as requiring a specific intent. "By way of conclusion, it may be said that it is better, when considering the effect of the defendant's voluntary intoxication upon his criminal liability, to stay away from those misleading concepts of general intent and specific intent. Instead one should ask, first what intent (or knowledge) if any does the crime in question require; and then, if the crime requires some intent (knowledge), did the defendant in fact entertain such an intent (or, did he in fact know what the crime requires him to know)." W. LaFave and A. Scott, Handbook on Criminal Law, Chapter 4, Section 45 (1972).

5. *Commonwealth v. Ingram, supra; Commonwealth v. Brown, supra; Commonwealth v. Reid, supra; Commonwealth v. Walters, supra; Commonwealth v. Jones, supra; Commonwealth v. McCausland, supra; Commonwealth v. Walker, supra; Commonwealth v. Eyler,* 217 Pa. 512, 66 A. 746 (1907); *Commonwealth v. Cleary,*

felonious homicide cases, the *Tarver* Court concluded without precedent that intoxication evidence was only to be received to negate the specific intent to kill required by the crime of murder in the first degree. An analysis of these opinions, however, clearly does not provide a basis for such a conclusion. These decisions were primarily addressed to the problem of whether evidence of intoxication should be permitted to reduce the charge to voluntary manslaughter.[6] Each of these cases, faced with the issue, recognized that intoxication was not a basis for excuse or mitigation but was germane to the issue of the existence of premeditation and deliberation. While it is true that they concluded that the evidence was not to be used to reduce the crime to voluntary manslaughter, and concededly in some instances mention a distinction between a lesser degree and another grade of crime, a careful reading of these cases indicates that the crucial consideration for their conclusion was that the fact of intoxication was irrelevant to the question of the absence or presence of legal provocation and passion. See *Commonwealth v. Ingram, supra.* We agree that to incorporate one's state of sobriety into the test of sufficient provocation would be completely improper. To follow this approach would be tantamount to accepting intoxication as a mitigating factor. This, however, is far different from attempting to ascertain the presence of a state of mind required by the crime.

 It has been argued that an extension in the allowance of the use of intoxication evidence would "only open wide the door to defenses built on frauds and perjuries, but would build a broad, easy turnpike for escape." *Commonwealth v. Ingram, supra.* The obvious fallacy of

135 Pa. 64, 19 A. 1017 (1890); *Jones v. Commonwealth,* 75 Pa. 403 (1874).

6. *Commonwealth v. Ingram, supra; Commonwealth v. Reid, supra; Commonwealth v. Walters, supra; Commonwealth v. Brown, supra.*

this argument is that we are not creating a new defense. Under our system of jurisprudence the legislature is charged with the responsibility of defining the elements of crimes. In discharging this responsibility they have required that the crimes of robbery and burglary must be accompanied by a specific intent. *Commonwealth v. Tarver, supra; Commonwealth v. Simpson,* 436 Pa. 459, 260 A.2d 751 (1970); *Commonwealth v. Darcy,* 362 Pa. 259, 66 A.2d 663 (1949), cert. denied, 338 U.S. 862, 70 S.Ct. 96, 94 L.Ed. 528 (1949). See also, *Commonwealth v. Muniem,* 225 Pa.Super. 311, 303 A.2d 528 (1973); *Commonwealth v. Del Marmol,* 206 Pa.Super. 512, 214 A.2d 264 (1965). It is axiomatic that the presumption of innocence requires the Commonwealth to prove each element of the crime charged beyond a reasonable doubt. *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974); *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A.2d 441 (1959). It was for this reason that this Court in *Rose* rejected the former rule requiring the defendant to sustain the burden and recognized that the requisite intent must be established by the Commonwealth in accordance with its burden of proof.

It would clearly be an anomaly to suggest that although the Commonwealth must establish the existence of a mental state beyond a reasonable doubt, and that failure to sustain that burden requires an acquittal; yet preclude the defendant from producing relevant evidence to contest the issue.[7]

There are instances in the law of evidence where testimony which may be relevant to a material fact in issue is nevertheless excluded. However, these instances are limited to that type of evidence that we have deemed to be

---

7. Article 1, § 9 of the Pennsylvania Constitution, P.S., sets forth the rights of an accused in criminal prosecutions. Even the most myopic interpretation of this clause would necessarily concede the right to offer relevant evidence to challenge a material issue of fact. See *Commonwealth v. Jones,* 459 Pa. 62, 327 A.2d 10 (1974).

inherently unreliable, e. g., results of polygraph tests. This admittedly is not the case with reference to evidence of intoxication and its affect on the mental capacity of the accused. For many years we have admitted this testimony in the most serious crime in this Commonwealth, i. e., murder in the first degree. To now contend that it would be less reliable in lesser offenses would be the height of absurdity.

 We therefore conclude the *Tarver* decision, insofar as it suggested the evidence of intoxication offered for the purpose of negating the presence of specific intent may not be used in cases other than felonious homicide, is rejected.[8] We also are constrained to find that the trial court committed reversible error in refusing to permit evidence and to charge the jury as to the possible effect of appellant's consumption of alcohol and ingestion of drugs upon his capacity to form the requisite intent required in the charges of robbery and burglary. Further, in view of the fact that the jury was given the option to consider the case under a theory of felony-murder, the finding of murder in the first degree must also be overturned.

Accordingly, the judgments of sentence are reversed and a new trial awarded.

EAGEN, J., filed a dissenting opinion in which JONES, C. J., and O'BRIEN, J., join.

EAGEN, Justice (dissenting).

In the past, this Court has never deviated from the position that voluntary intoxication, no matter how gross

---

8. The New Crimes Code is consistent with this view and has expressly repudiated the *Tarver* doctrine:

"Intoxication or drugged condition are not, as such, defenses to a criminal charge; but in any prosecution *for any offense*, evidence of intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to negative an element of the offense." (Emphasis added). 18 Pa.C.S. § 308, added by Act of December 6, 1972 (P.L. 1482, No. 334) § 1.

or long continued, neither exonerates nor excuses a person from his criminal acts. *Commonwealth v. Tarver,* 446 Pa. 233, 284 A.2d 759 (1971); *Commonwealth v. Reid,* 432 Pa. 319, 247 A.2d 783 (1968); *Commonwealth v. Simmons,* 361 Pa. 391, 65 A.2d 353 (1949); *Commonwealth v. Cleary,* 135 Pa. 64, 19 A. 1017 (1890). "If it were [so], all crimes would, in a great measure, depend for their criminality on the pleasure of their perpetrators, since they may pass into that state when they will." *Keenan v. Commonwealth,* 44 Pa. 55, 58 (1862). Today, however the majority has adopted a new position which, in effect, will allow voluntary intoxication to serve as an excuse for criminal responsibility.

The rationale behind our long-standing rule as to voluntary ingestion of intoxicants and drugs is apparent. An individual who places himself in a position to have no control over his actions must be held to intend the consequences. Such a principle is absolutely essential to the protection of life and property. There is, in truth, no injustice in holding a person responsible for his acts committed in a state of voluntary intoxication. It is a duty which everyone owes to his fellowmen and to society, to preserve, so far as it lies in his own power, the inestimable gift of reason. If such reason is perverted or destroyed by fixed disease, though brought on by his own vices, the law holds him not accountable. But if by a voluntary act he temporarily casts off the restraints of reason and conscience, no wrong is done him if he is considered answerable for any injury which he, in that state, may do to others or to society. See generally, *People v. Rogers,* 18 N.Y. 9; 21 Am.Jur.2d Criminal Law § 107.

While adhering to the above-mentioned rule, this Court has recognized there may be instances where an individual has voluntarily placed himself in a state of intoxication so as to be incapable of conceiving any intent. In those instances, we have permitted evidence of such in-

toxication to lower the *degree of guilt* within a crime, but only where the Legislature has specifically provided for varying degrees of guilt within a crime. *Commonwealth v. Tarver*, supra; *Commonwealth v. Ingram*, 440 Pa. 239, 270 A.2d 190 (1970); *Commonwealth v. Brown*, 436 Pa. 423, 260 A.2d 742 (1970); *Commonwealth v. Walker*, 283 Pa. 468, 129 A. 453 (1925); *Commonwealth v. Eyler*, 217 Pa. 512, 66 A. 746 (1907). Thus "[i]f the charge is *felonious* homicide, intoxication, which is so great as to render the accused incapable of forming a wilful, deliberate and premeditated design to kill or incapable of judging his acts and their consequences, may properly influence a finding by the trial court that no specific intent to kill existed, and hence to conclude the killing was murder in the second degree." [Emphasis in original.] *Commonwealth v. Tarver*, supra 446 Pa. at 239, 284 A.2d at 762. As the *Tarver* Court recognized, this exception to the general rule does not change the nature of the crime. Murder still remains murder. Only the degree of the crime has been affected. Because there exist no analogous degrees of robbery (and instantly burglary), the *Tarver* Court refused to extend this exception beyond the homicide area. To hold otherwise, and allow evidence of voluntary intoxication to negate the necessary specific intent required of both robbery and burglary, would permit an individual's voluntary intoxication to serve as a complete exoneration for all criminal acts committed while in that state. This cannot be tolerated.

The majority, while paying lip-service to the fundamental rule that voluntary intoxication is no defense to an individual's criminal acts, nevertheless sanctions such a defense. In ruling that evidence of voluntary intoxication can be offered for the purpose of negating the presence of the required specific intent in both robbery and burglary, the majority has, without good reason, discarded the traditional rule. It matters little that the ma-

jority regards such evidence as only bearing upon an element of the crime, the specific intent of the perpetrator, rather than serving as a defense to such crime. The end result is the same and no amount of legal jargon will make it otherwise. If a criminal defendant, charged with either robbery or burglary, is found by the jury, because of voluntary intoxication, not to have had the requisite specific intent, he must be found not guilty. Only a person blind to reality could fail to perceive that there is no practical difference between the admission of evidence to negate an element of the crime and the admission of evidence to constitute a defense. The end result is that human life and property would hardly be considered any longer as being under legal protection. An individual will, henceforth, be permitted to avail himself of his voluntary intoxication to exempt him from any legal responsibility which would attach to him, if sober. As one noted annotator said in speaking of voluntary intoxication as a defense to criminal responsibility, ". . . all that the crafty criminal would require for a well-planned . . . [robbery or burglary] would be a revolver in one hand to commit the deed, and a quart of intoxicating liquor in the other . . . ." 8 A.L.R.3d 1236, 1245 (1966). See also *Commonwealth v. Ingram,* supra 440 Pa. at 247, 270 A.2d at 194.

Today, all too many murderers, robbers, burglars, rapists and other felons escape the imposition of justice for unsound and unrealistic reasons. The present ruling of this Court widens that avenue of escape.

I emphatically dissent.

JONES, C. J., and O'BRIEN, J., join in this dissenting opinion.