## Commonwealth v. Miller

*W. Wayne Punshon*, for Commonwealth.
*Wm. H. Sage*, for defendant.

DOWLING, *J.*, April 2, 1975—In a nonjury trial, Mr. Miller was adjudged guilty of "recklessly endangering another person," a violation of section 2705 of the Crimes Code, of December 6, 1972, P.L. 1068 (No. 334), 18 PS §2705, which reads:

"A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."

It seems that Calvin became despondent when

told by his friend Betty Jane that he would have to take up lodging elsewhere. The usual drinking and quarreling ensued, terminated by defendant taking a rifle to his bedroom with the announcement that he was going to kill himself. Death did not come to Calvin but it nearly did to a young lady living across the street.

Phyllis Stern testified that she was lying on the floor of her second-floor apartment, which was diagonally across the street from defendant's bedroom, when she heard a noise and looking up saw plaster on the floor, a slug on the bed, and a bullet hole in the wall at body height. She summoned the local constabulary. Betty Jane, who had heard the suspicious noise, went outside and, seeing the police, told them of defendant and his rifle. The officers entered the home and requested defendant to come downstairs which he did but denied knowing anything of the incident; claiming to be asleep. A search of his room disclosed the gun behind a dresser loaded with 25 .22 caliber rounds and a spent cartridge case lying by the window, which was raised some 18 inches. Ballistics analysis disclosed that the expended slug found in Ms. Stern's apartment and the empty cartridge casing found by defendant's window were fired from the rifle found behind his dresser.

While it is true there is no direct evidence that defendant fired the shot, circumstances lean rather heavily in support of violation of the charged section of the Crimes Code. In Shakespeare's Henry VI, Part II, Act III, Scene II, we find the Earl of Warwick speaking appropriate to this situation:

"Who finds the heifer dead and bleeding fresh

and sees fast by a butcher with an axe, but will suspect 'twas he that made the slaughter'."

It is suggested that perhaps the shot was fired accidentally or occurred when defendant attempted to kill himself. Considering that the window was raised some 18 inches, such conclusions require a rather eccentric imagination. In any event, in evaluating the sufficiency of the evidence, the testimony must be read in a light most favorable to the Commonwealth as the verdict winner and the Commonwealth is entitled to all reasonable inferences arising from the evidence: Commonwealth v. Stukes, 435 Pa. 535 (1969).

Defendant clairvoyantly, for the decision was not rendered until March 18th, digs into the burial ground of Commonwealth v. Graves, 461 Pa. 118, 334 A. 2d 661 (1975) with its concomitant shrouds for the peaceful citizenry and asserts even if he did fire the shot he was too drunk to form the specific intent to "recklessly endanger another person."

Fortunately, for the sanity of jurisprudence, this assertion can be thrust aside in this case on a factual basis.

Defendant came downstairs and talked to the officer, claiming to have been asleep, but then later told them that the gun was behind the dresser in his second-floor bedroom. These actions negate that he was in a drunken stupor and unable to form the requisite intent.

Fashionably, he also tries to creep under the aegis of "speedy trial," but he is too late. Such technical defenses must be raised in liminie.

While the complaint was filed February 23, 1974 and the trial did not commence until January 6, 1975, thus deviating from the 270-day rule,[1] defendant failed to raise this issue until the day of trial. Sub-paragraph (f) of Rule 1100 provides:

"(f) At any time before trial, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. A copy of such application shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon."

The reason for this is obvious, for, in addition to saving the Commonwealth the expense and inconvenience of trial preparation and witness attendance, it affords an opportunity for evidence to be presented as to whether, in fact, the rule has been violated or whether defendant has waived his rights by being unavailable during some portion of the period, requested a continuance or in some other manner is not entitled to the protection of the prompt trial rule. If defendant had moved prior to trial for dismissal, the Commonwealth would have had the opportunity to investigate and determine for what periods, if any, defendant was unavailable. The facts of record do indicate that he failed to appear on the date set for the first preliminary hearing March 18, 1974, and the hearing had to be rescheduled for April 25, 1974. At a proper hearing, it

---

1. Pennsylvania Rule of Criminal Procedure 1100a(1). Trial in a court case in which a written complaint is filed against a defendant after June 30, 1973, but before July 1, 1974, shall commence no later than two hundred seventy (270) days from the date on which the complaint is filed.

may well have been determined that this period of 49 days, and perhaps other periods, constitute unavailability, which time does not count in computing the 270 days. All of this, of course, simply illustrates the necessity for the issue being raised prior to the day of trial.

It should further be noted that when defendant was arraigned on December 6, 1974, through counsel, he entered a plea of not guilty and stood silent as the court ordered January 6, 1975 as the trial date. It can certainly be argued that by pleading not guilty and demanding a right to a jury trial at the time of arraignment when the 270-day period had already elapsed, defendant waived any rights he might have had under Rule 1100.

Accordingly, we enter the following

## ORDER

And now, April 2, 1975, defendant's post-trial motions are denied and the district attorney is directed to present him for sentencing.