350 A.2d 405

COMMONWEALTH of Pennsylvania

v.

John MONELLI, Jr., Appellant.

Supreme Court of Pennsylvania.

Submitted Jan. 17, 1975.

Decided Jan. 29, 1976.

Patrick J. Flannery, Asst. Public Defender, Wilkes-Barre, for appellant.

Patrick J. Toole, Jr., Dist. Atty., Wilkes-Barre, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

■■■■■■■■■

OPINION

PER CURIAM.

Judgment of sentence affirmed.

MANDERINO, J., filed a dissenting opinion in which ROBERTS, J., joins.

MANDERINO, Justice (dissenting).

I dissent since the appellant should be granted a new trial.

On January 9, 1973, John Monelli, Jr., the appellant, was arrested for the murders of his wife, Emily Monelli, and a caseworker for the Pennsylvania Department of Welfare, Reverend W. Lewis Jones. Appellant was convicted of first degree murder in the case of his wife, and second degree murder in the case of Reverend Jones. Post-verdict motions were filed and denied, and this appeal followed.

In a tape recorded statement given by appellant to the police, the following facts were established:

On the morning of January 9, 1973, appellant, his wife and two children were residing with his wife's parents, where they had been staying for about two and one-half weeks, because of a water problem of some kind at their home. Appellant stayed home from work because he did not feel well. Appellant and his wife had an argument about staying at his in-laws' home. Appellant wanted his wife to return to their home with him. She complained about the lack of heat and coal at their home. She was angry because the appellant had not gone to look at another house several days earlier as he had promised. Appellant complained to his wife that she stayed at her mother's home too often. He wanted her to return home with him and also complained that he thought the environment in that neighborhood was not good for his chil-

dren. Failing to persuade his wife, appellant did what he said he frequently did after similar arguments; he went to a local tavern where he spent several hours drinking. He arrived at the tavern at 11:15 a. m., and remained until 1:30 p.m., during which time he consumed three shots of blackberry brandy and ten glasses of beer. Returning to his wife, appellant learned that she had secured employment and was to go to work that afternoon. He became angry because he did not want her to work and said that there would be nobody to watch their children that afternoon since his mother-in-law would not be at home. Appellant again left and went to his own home where he picked up and loaded his hunting rifle, drank a glass of beer and walked back with the rifle to his in-laws' home, intending to shoot his wife. When he arrived there, he found his wife talking to Reverend Jones, a caseworker for the Department of Welfare. Appellant thought he was a relief investigator because the appellant was on partial relief. Appellant asked his wife to return home with him, but she refused. Reverend Jones stood up and appellant shot him and then his wife. Appellant said that he felt sorry for what he did because he loved his wife, but she didn't understand that. Appellant called the police, who came to the scene and took him to the Borough Building where questioning resulted in the tape recorded statement, which began a little over an hour after the police left the appellant's in-laws' home.

Appellant contends that the trial court erred in refusing to admit the testimony of a psychiatrist as to the mental condition of appellant at the time of the crime. I agree.

When the defense opened its case, it attempted to call as its first witness Dr. Milan S. Smolko, a psychiatrist, the prosecution requested an offer to which appellant's counsel replied:

"After qualifying him as a psychiatrist, and if he is qualified, I then intend to ask him if he examined the

defendant, when and where, and whether he interviewed him, and based on that interview and the examination, if he has any conclusion as to the defendant's mental state at the time of the shooting and if so, what he based that opinion on."

Further discussion then took place about the defense's offer. Defense counsel made it clear that he was attempting to establish that the appellant's mental condition and ability to control himself was diminished at the time of the shooting. *See Commonwealth v. Ingram*, 440 Pa. 239, 270 A.2d 190 (1947); *Commonwealth v. Brown*, 436 Pa. 423, 260 A.2d 742 (1970); *Commonwealth v. Walters*, 431 Pa. 74, 244 A.2d 757 (1968); *Commonwealth v. Jones*, 355 Pa. 522, 50 A.2d 317 (1947); *Commonwealth v. McCausland*, 348 Pa. 275, 35 A.2d 70 (1944); *Commonwealth v. Walker*, 283 Pa. 468, 129 A. 453 (1925). *See also Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975).

The court concluded that the offered testimony was irrelevant and meaningless and sustained the prosecution's objection to the admission of the testimony. I agree with the appellant's contention that the refusal to allow the offered testimony was error. The appellant's mental state at the time of the shooting was highly relevant. Indeed, the only defense offered concerned appellant's mental state. In an obvious attempt to reduce the verdict to less than murder in the first degree, the defense called only one witness after the court refused to allow Dr. Smolko to testify. This witness was the defendant's father, and it is clear from the thrust of defense counsel's questions to this witness that the only defense attempted to be established was a reduction of the crime from murder in the first degree based on the appellant's mental state.

What we said in *Commonwealth v. McCusker*, 448 Pa. 382, 391, 392, 292 A.2d 286, 291 (1972), is applicable to this case:

> "The principal vice of rejecting psychiatric testimony, as the trial court did here, is that it excludes from the consideration of the factfinders evidence of probative value vital to a determination of defendant's state of mind.

> .    .    .    .    .    .    .    .

> "It would indeed be anomalous to receive psychiatric evidence—as our courts do—to establish the complete defense of insanity but at the same time reject psychiatric evidence which seeks to establish only a partial defense   .   .   .."

*Id.* at 391, 392, 292 A.2d at 291.

"Surely the admission of relevant and probative psychiatric evidence would have aided the jury in resolving [the] conflicting claims [about appellant's mental state]." *Commonwealth v. McCusker*, 448 Pa. 382, 391, 292 A.2d 286, 291 (1972). There is no valid reason for the legal system to conceal from the jury expert opinion in the area of psychiatry widely used and accepted elsewhere in the society. Particularly is this so when we ask the jury to consider the complex and complicated questions always involved in determining a person's mental state at the time a particular act is committed. The appellant was entitled to have the jury hear and consider the testimony of Dr. Smolko in determining the justice of the matter before them.

Judgment of sentence should be reversed and a new trial granted.

ROBERTS, J., joins in this dissenting opinion.