Commonwealth v. Morris

*Gary D. Wilt, District Attorney*, for Common-wealth.

*James M. Schall*, for defendant.

KELLER, *J.*, May 13, 1976 — The criminal complaint charging defendant, Norman Morris, with violation of section 4906 of the Crimes Code of December 6, 1972, P.L. 1482, 18 C.P.S.A. §4906, was filed on March 3, 1975. Defendant was indicted on May 19, 1975. He was tried before a jury on June 10 and 11, 1975, and found guilty. Motions for new trial and in arrest of judgment were timely filed and are now before the court for disposition.

Defendant in the case at bar was the operator of a private club (operated without a liquor license) in Thompson Township, Fulton County, Penna., known as the Glen-Mor Hunting Club. In the early hours of February 8, 1975, Ronnie Lee Smith and two other young men visited the club, had several alcoholic drinks and Mr. Smith became involved in a poker game with other club patrons. Smith lost some money in the game and concluding that he had been cheated grabbed some money from a mantel behind the club bar and departed. The three young men were pursued by defendant and other patrons, apprehended, returned to the club and severely beaten by club patrons. Mr. Smith was hospitalized at the Veterans Administration Hospital, Martinsburg, West Virginia, as a result of the beating administered to him.

The report of the Smith beating was made to the Pennsylvania State Police Substation in Fulton County and Trooper Vincent W. Joyce was detailed to investigate the matter. He arrived at the Glen-Mor Hunting Club at about 10:30 p.m. on Febru-

ary 9, 1975, and interviewed defendant, who reported to him that the three young men had entered the club at 3:30 a.m. on February 8, 1975. One of the three, Lewis Mills, pointed a shotgun at him as he stood behind the bar and demanded money. Defendant stated he gave the cigar box full of money to Ronnie Lee Smith. Joseph Smith grabbed two bottles of liquor from the bar and the three young men ran out the door. Defendant stated he knew all three of the young men; that he and other patrons pursued them on foot; that the gun carried by Mills was discharged in the air; that they were captured and returned to the club where the money was recovered and they were beaten by the patrons. Defendant delivered to Trooper Joyce the single-barreled 12-gauge shotgun, which defendant identified as the weapon Mr. Mills had pointed at him. Trooper Joyce opened the shotgun and found a recently discharged shell case in the chamber. On cross-examination the trooper testified that defendant apparently had a few beers, but appeared to have all of his faculties and was not under the influence of intoxicants and his senses were not impaired.

On February 10, 1975, Troopers Joyce and Good met defendant at Poorbaugh's Garage and again discussed the robbery with him. On this occasion Mr. Morris told the officers that he was not behind the bar when the three young men entered the club, but rather was in the back room, where he heard someone yell, "They've got your money!" Defendant stated he ran to the door and Mr. Mills shoved the gun in his face. In all other respects defendant's story remained the same as the one he had given to Trooper Joyce the preceding evening. Defendant gave the officer a number of names of

individuals who he said were witnesses to the robbery.

Trooper Good testified that he then proceeded to the Veterans Administration Hospital, Martinsburg, West Virginia, to talk to Ronnie Lee Smith, who told him that there was no robbery, no gun used by him or either of his companions, and that he had taken money from a mantel behind the club bar to reimburse himself for the money lost in the card game. The officer interviewed the other two young men whose stories corroborated fully the story of Mr. Smith. Some, but not all, of the witnesses identified by defendant were interviewed by the officer and their statements did not corroborate defendant's story. On the basis of the investigation the complaint charging false reports to law-enforcement authorities, section 4906, was filed against defendant.

The foregoing represents a summary of the Commonwealth's evidence introduced at the trial of the case. The single-barrel shotgun was admitted in evidence as a Commonwealth exhibit over the objection of the defense. By way of defense defendant's son testified that the Commonwealth's exhibit 1 was, in fact, his shotgun that he had fired in the air after the money was stolen. The son testified that he observed Mr. Smith taking the money and Mr. Mills taking the liquor, but he did not testify that any of the three young men had a weapon or that his father was present when the thefts occurred. Defendant's wife testified to being present at the time Trooper Joyce talked to defendant on February 9th, and stated that defendant had been drinking almost all day and on cross-examination that defendant was so drunk at that time that she didn't pay any attention to what was said. She also

testified that she didn't see anybody held up at gunpoint at the time the money was taken by Mr. Smith. Defendant testified to his conversation with the trooper; that he had a few beers during the day; that he was asked what had happened and had been reluctant to say anything until the officer insisted at which time he gave a statement about a robbery and may have said one of the young men was carrying a gun and did deliver the gun to the trooper which he found outside the club. Defendant testified he didn't remember if he said he was held up at gunpoint, but testified that he didn't tell the trooper what kind of a gun they used and just handed him the gun that was found. He stated that he thought he was reporting what had happened from information given to him. Defendant also stated that he didn't remember what he had said to the officer because he was intoxicated.

By way of rebuttal, Troopers Joyce and Good testified to various matters contradicting the testimony of defendant.

Defendant contends a new trial must be awarded or the motion in arrest of judgment sustained by reasons of the following errors of law:

. . .

4. The trial court erred in failing to charge the jury that if they found defendant was under the influence of alcohol at the time of making the statements to the police officers that factor could be taken into consideration in determining whether information was knowingly given.

5. The trial court erred in failing to charge the jury that if they found force had been used in the commission of the theft about which the offense arose, they could find that a robbery had occurred.

6. The trial court erred in charging the jury that

it made no difference under section 4906(a) or 4906(b) whether defendant went to see the police officers or they sought defendant out and received the information in the course of an investigation instigated by report made by another.

7. Whether section 4906 of the Crimes Code is unconstitutional and constitutes an unconstitutional denial of due process by reason of being vague, indefinite and uncertain. . . .

## IV.

Here, defendant contends that the court erred in declining to charge the jury that it could find defendant was under the influence and if it found he was under the influence, then could further find he could not have formed the requisite intent to make a false report and to implicate another in a criminal investigation or charge. Defendant suggests that the court, by declining to so charge, has supplanted the function of the jury by making an independent finding that defendant was not under the influence.

According to the court's notes the evidence of defendant's consumption of alcoholic beverages and the affect upon him were limited to:

(a) Testimony of his wife on direct examination that he had been drinking almost all day, and on cross-examination that he was so drunk when he talked to the trooper that she didn't pay any attention.

(b) Defendant's testimony on direct examination that he had a few beers during the day and on cross-examination that he didn't remember what he told Trooper Joyce because he was intoxicated.

Evidence to the contrary would be that of Trooper Joyce previously related and the fact that

defendant essentially related the same story to Troopers Joyce and Good on the following day that he had told Trooper Joyce.

The fundamental thrust of this argument is defendant's reliance on Commonwealth v. Graves, 461 Pa. 118, 334 A. 2d 661 (1975), where appellant had testified to the consumption of a quart or more of wine, the taking of LSD, that he hallucinated in various ways, became unconscious, suffered limited amnesia and had no recollection of the occurrence. Appellant's testimony was corroborated by the testimony of a psychiatrist, who testified upon examination, certain tests and his conclusion that appellant was under the influence of the two intoxicants and was unable to form the conscious intent to take a life.

We find no difficulty in distinguishing the case at bar from Commonwealth v. Graves, supra, in that there is no testimony as to the quantity of alcohol consumed or the effect of such consumption upon defendant at the time of the alleged false report. Rather, we have the bald assertion by defendant and his wife that he was "drunk," which we consider to be too vague to justify a specific charge on intoxication as mandated by Commonwealth v. Graves. Further, it must be noted that the jury was charged as to the elements of the offense and was specifically instructed the Commonwealth was required to prove beyond a reasonable doubt that defendant knew at the time of the report that he was not telling the truth and that he knowingly gave the false information with the intent to implicate another.

We, therefore, find no error and the contention is dismissed.

## V.

The offense of robbery is defined in section 3701 of the Crimes Code in the following language:

"(1) A person is guilty of robbery if, in the course of committing a theft, he:

"(i) inflicts serious bodily injury upon another;

"(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; or

"(iii) commits or threatens immediately to commit any felony of the first or second degree.

"(2) An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission."

Here, in reliance upon defendant's testimony that Lewis Mills hit him in the jaw after the theft, and after defendant had followed Mills into the woods and had walked back to the porch of the club and was standing there talking to him, defendant contends a robbery was committed. This exercise in legal legerdemain is accomplished on the theory that the hit on the jaw inflicted serious bodily injury or threatened defendant with or put him in fear of immediate serious bodily injury, while Mills was in flight after the commission of the theft by Smith; thus, constituting the crime of robbery as defined above.

Defendant urges the court erred in failing to charge the jury on the elements of the offense of robbery, and that if the jury finds a robbery occurred, then it must return a verdict of not guilty because there was no false report.

Section 2301 of the Crimes Code defines "serious bodily injury" in the following language: "Bodily

injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

Absolutely no evidence was introduced which would qualify a hit on the jaw as constituting serious bodily injury. Further, we are satisfied that any flight Mr. Mills might have engaged in had terminated with his apprehension by defendant and his return to the club. We, therefore, conclude no evidence of two of the essential elements of the crime of robbery had been introduced and it would have been error for the court to have charged the jury as requested by defendant.

The contention is dismissed.

## VI.

Under this motion defendant asserts the rather curious argument that if a law-enforcement officer initiates the contact with an individual, rather than the individual initiating the contact with the law-enforcement officer and that individual then gives false information with intent to implicate another, such conduct does not constitute a violation of section 4906 of the Crimes Code. Defendant also advances the equally curious argument that since the investigation did produce a prosecution for theft and conviction of Ronnie Smith, the ends of justice have been attained and the prosecution of Norman Morris for his "colorful representation of the facts" was unwarratned.

Since the purpose of section 4906 was at least in part to prevent the dissipation of the time and energy of law-enforcement officers in investigating false information, we find the defendant's argument specious and it is dismissed.

## VII.

"Section 4906. False reports to law enforcement authorities

"(a) Falsely incriminating another. — A person who knowingly gives false information to any law enforcement officer with intent to implicate another commits a misdemeanor of the second degree.

"(b) Fictitious reports. — A person commits a misdemeanor of the third degree if he:

"(1) reports to law enforcement authorities an offense or other incident within their concern knowing that it did not occur; or

"(2) pretends to furnish such authorities with information relating to an offense or incident when he knows he has no information relating to such offense or incident."

Defendant contends the language of the section is vague, indefinite and uncertain and, therefore, renders the section unconstitutional and a deprivation of the due process requirements of the United States and Commonwealth Constitutions. In support of this argument, he contends that the court found it necessary to insert the words "in a criminal action or charge" after the words in a criminal action or charge to the jury, which demonstrates the vagueness and uncertainty of the statutory language.

An examination of the court's charge discloses that in the discussion of the elements of the offense of "falsely incriminating another" the trial judge identified the third element of the crime in the following language, 'That the false information was given with the intention of implicating or involving another in a criminal investigation or

criminal charge." In further amplification, it was stated:

"The Commonwealth must prove beyond a reasonable doubt that the defendant knowingly gave the false information to the officer with the intent to implicate . . . in a criminal investigation or charge. . . . Therefore, the jury may, if it sees fit, infer from all of the circumstances surrounding the giving of the false information whether the defendant intended to implicate . . ."

We do not find the language adopted by the court in its charge in any way tacitly acknowledges the statutory language to be vague, indefinite or uncertain; nor do we find the statutory language to suffer from any constitutional defect.

Under this same question of law defendant has also objected to that portion of the court's charge which identifies section 4906(b) as a lesser included offense, which the jury would be required to consider in the event it concluded that the Commonwealth had failed to prove beyond a reasonable doubt all of the elements of the greater crime of "false incrimination." In our judgment a careful reading of subsections (a) and (b) of section 4906 discloses a legislative intent to establish two separate crimes with the greater crime, i.e., falsely incriminating another, being the more serious of the two and graded as a misdemeanor of the second degree. Presumably, and quite logically, the legislature felt an intentional effort to implicate another person constituted a more serious offense than that of reporting an offense which did not occur or furnishing information relating to an offense when the relator had no such information.

The objection is dismissed.

## ORDER

Now, May 13, 1976, the post-trial motions for a new trial and in arrest of judgment are dismissed.

The Probation Department of Fulton County will prepare a pre-sentence investigation report. Sentencing is deferred until the report is completed.

Upon completion of the pre-sentence report the district attorney shall cause defendant to appear before the court for sentencing.

Exceptions are granted defendant.